## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:23-CV-57 (LAG) |
| | : | |
| CHRISTOPHER W. WHITMAN, | : | |
| REBECCA V. WHITMAN, ULOC, LLC, | : | |
| ZAMEKRI, LLC, ALL OUT | : | |
| DIVERSIFIED, LLC, ZACHARY | : | |
| WHITMAN, CWW & WADE, LLC | : | |
| MICHELLE LEWIS, CHARLES BRILEY, | : | |
| DOUGHERTY COUNTY TAX | : | |
| COMMISSIONER, and GEORGIA | : | |
| DEPARTMENT OF REVENUE, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## <u>ORDER</u>

Before the Court is the Government's Motion for Default Judgment Against Michelle Lewis; Charles Briley; ULOC, LLC, Zamekri, LLC; All Out Diversified Services, LLC a.ka. AODS, LLC; and CWW & Wade LLC (Motion for Default Judgment) (Doc. 58), the Government's Motion for Summary Judgment Against Defendants Christopher Whitman and Zachary Whitman (Doc. 60), Defendant Zachary Whitman's  Motion for Summary Judgment (Doc. 59), and Defendant Christopher Whitman's Motion for Summary Judgment (Doc. 64). For the reasons below, the Government's Motion for Default Judgment (Doc. 58) is **GRANTED**, the Government's Motion for Summary Judgment (Doc. 60) is **GRANTED**, Defendant Christopher Whitman's Motion for Summary Judgment (Doc. 64) is **DENIED**, and Defendant Zachary Whitman's Motion for Summary Judgment (Doc. 59) is **DENIED**.

**BACKGROUND**

This case is related to the criminal prosecution and conviction of Defendant Christopher Whitman in the Middle District of Georgia for organizing a fraud and bribery scheme relating to his trucking companies and the attendant unpaid taxes and trust fund recovery penalties of Defendants Christopher and Rebecca Whitman (collectively, the Whitmans). [1] (*See* Docs. 1, 60-5). *See United States v. Whitman*, No. 1:14-CR-1 (WLS) (TWL) (Doc. 75) (M.D. Ga.). Defendant Christopher Whitman was indicted in 2014 and convicted in 2015 of forty-two counts of conducting a scheme to deprive the United States of money, property and honest services through the use of interstate wires in violation of 18 U.S.C. §§ 1343 and 1346, four counts of bribery in violation of 18 U.S.C. § 201(b)(1), one count of theft of government property in violation of 18 U.S.C. §§ 2, 641, two counts of obstruction of an official proceeding in violation of 18 U.SC. §§ 2, 1512(c), and one count of destruction of records in a federal investigation in violation of 18 U.S.C. §§ 2, 1519. *See id.* (Docs. 75, 174). After the scheme was uncovered, the Whitmans filed federal income tax returns reporting the income they received from the scheme and the resulting tax for the years between 2009 and 2012. (Doc. 60-5 ¶ 1; Doc. 60-3 ¶ 11). The Government assessed the tax liabilities for these years, sent the Whitmans notice of the assessments, and made a demand for payment of the 2009 through 2013 tax liabilities. (Doc. 60-5 ¶ 2; Doc. 60-3 ¶ 1). The Whitmans did not pay their taxes for the years at issue despite receiving the notice and demand from the Government. (Doc. 60-5; Doc. 60-3 ¶ 11). As of July 23, 2024, the Whitmans owe the Government $9,782,552.77 in taxes and penalties from the years at issue, as presented in the table below. (Doc. 60-5 ¶ 2; Doc. 60-3 ¶ 17).

---

[1]    The relevant facts are derived from the Government's Statements of Material fact and the record in this case. (*See* Doc. 60-5). Neither Zachary Whitman nor Christopher Whitman filed a response to the Government's Statement of Material Facts. (*See* Docket). When evaluating the Motions for Summary Judgment, the Court "view[s] the facts in the light most favorable to the nonmoving party on each motion." *James River Ins. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1251 (11th Cir. 2022) (citing *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)).

| Tax Year | Assessment Date | Type of Assessment | Amount |
|---|---|---|---|
| 2009 | October 15, 2012 | Tax | $493,671.00 |
| | October 15, 2012 | Late Filing Penalty | $24,297.70 |
| | October 15, 2012 | Interest | $44,630.26 |
| 2010 | December 31, 2012 | Tax | $1,411,920.00 |
| | December 31, 2012 | Late Filing Penalty | $81,053.31 |
| | July 15, 2013 | Interest | $77,655.60 |
| 2011 | November 12, 2012 | Tax | $2,784,910.00 |
| | November 12, 2012 | Late Filing Penalty | $97,121.85 |
| | November 12, 2012 | Interest | $48,407.72 |
| 2012 | December 16, 2013 | Tax | $541,560.00 |
| | December 16, 2013 | Late Filing Penalty | $9,574.89 |
| | December 16, 2013 | Late Payment Penalty | $24,145.20 |
| | December 16, 2013 | Interest | $10,913.77 |
| 2013 | December 8, 2014 | Tax | $123,309.00 |
| | December 8, 2014 | Late Filing Penalty | $2,214.24 |
| | December 8, 2014 | Late Payment Penalty | $4,932.36 |
| | December 8, 2014 | Interest | $2,425.44 |
| Total: $9,782,552.77 | | | |

(Doc. 60-5 ¶ 2).

The IRS also investigated the Whitmans in relation to United Industrial of Georgia's failure to collect, truthfully account for, and pay the United States income tax withheld from the wages of the company's employees. (Doc. 60-1 at 3). Both consented to the assessment and collection of Trust Fund Recovery Penalties for all four quarters of 2011 and the first two quarters of 2012. (Doc. 60-5 ¶ 6; Docs. 60-30–60-33). The IRS assessed the trust fund recovery penalties for the time period at issue, amounting to $233,050.76, which are presented in the table below. (Doc. 60-5 ¶¶ 7–9; Doc. 60-9 at 14).

3

| Tax Period | Assessment Date | Amount |
| --- | --- | --- |
| March 31, 2011 | April 8, 2013 | $36,523.25 |
| June 30, 2011 | April 8, 2013 | $31,684.95 |
| September 30, 2011 | April 8, 2013 | $28,869.88 |
| December 31, 2011 | April 8, 2013 | $21,223.96 |
| March 31, 2012 | September 15, 2014 | $14,432.64 |
| June 30, 2012 | September 15, 2014 | $10,110.36 |
| Total: $233,050.76 | | |

On December 17, 2013, the Government filed Notices of Federal Tax Liens against the Whitmans in both Worth County and Dougherty County Georgia. (Doc. 60-12 1–4, 21). The Government re-filed the tax liens in April and September of 2022. (Doc. 60-5 at 4–5).

The crux of this action is the Government's allegation that the Whitmans bought or transferred six properties using funds from Defendant Christopher Whitman's fraudulent scheme in effort to conceal assets from the Government. (Doc. 60-1 at 34). First, the Whitmans owned a home at 3729 Georgia Highway 33 South, Sylvester, GA 31791 (the Sylvester Property). (Doc. 60-5 ¶ 13; Doc. 60-14). They transferred the Sylvester Property to ULOC, LLC—an entity owned by the Whitmans—by Warranty Deed recorded on May 17, 2011, for ten dollars. (Doc. 1 ¶¶ 63–70; Doc. 60-5 ¶ 14; Doc. 60-14). Next, Defendant Christopher Whitman owned rental properties at 1912 and 1919 Elkhorn Lane, Albany, Georgia (1912 Elkhorn Property and 1919 Elkhorn Property) (collectively, the Elkhorn Properties), and he organized two limited liability companies, Zamekri, LLC (Zamekri) and CWW & Wade, LLC (CWW). (Doc. 1 ¶¶ 63–70; Doc. 60-5 ¶¶ 18–19; Docs. 60-17, 60-18). He transferred the Elkhorn Properties to Zamekri, by Warranty Deed for ten dollars each on April 29, 2011. (Doc. 1 ¶¶ 63–70; Doc. 60-5 ¶ 20). Thereafter, Zamekri transferred the Elkhorn Properties to CWW, again for ten dollars each on May 3, 2012. (Doc. 1 ¶¶ 63–70; Doc. 60-5 ¶ 21).

Additionally, Defendant Christopher Whitman's company All Out Diversified (All Out) owned real property at 4200 Georgia Highway 33 South Doerun, Georgia 31714 (the

Doerun Property), which it sold to Defendant Zachary Whitman for $144,900 on December 30, 2015. (Doc. 60-5 ¶¶ 16–17; Doc. 60-16). The parties to the sale did not execute a written contract. (60-5 ¶ 17; Doc. 59-13). Defendant Rebecca Whitman avers that Defendant Zachary Whitman has paid $50,460.00 through $580 monthly installments for the Doerun Property per a written agreement. (Doc. 59-13 at 1; Doc. 59-12). Defendant Zachary Whitman explains that he has not made any payments on the Doerun Property since August 18, 2023, "because the IRS told him to make payments to the IRS as compensation and to show it as wages." (Doc. 60-28 at 4). (Doc. 60-5 ¶ 17; Doc. 60-28). Finally, All Out currently owns property located at 218 N. Mock Road, Albany, GA 31705 (the Mock Property). (Doc. 60-5 ¶ 22).

The Government filed tax liens against ULOC and All Out, as alter egos of the Whitmans, against Zamekri, and CWW, as nominees of Defendant Christopher Whitman, and against Defendant Zachary Whitman as a nominee of All Out. (Doc. 60-5 ¶ 12). The Whitmans requested collection due process hearings for the assessments of the taxes owed and the trust fund recovery penalties assessed against them, which terminated with respect to the unpaid income taxes on June 19, 2014 and as to the trust fund recovery penalties on July 2, 2014. (Doc. 60-5 ¶¶ 23–24; Docs. 60-6–60-8).

The Government brought this action on April 11, 2023, pursuant to 26 U.S.C. § 7403 against the Whitmans to: (1) "collect unpaid federal income tax assessments for tax years 2009 through 2013"; (2) "collect unpaid trust fund recovery penalty assessments for all four quarters of 2011 and the first two quarters of 2012"; and (3) "foreclose the United States' federal tax liens on" five properties "titled in the names of alter-egos or nominees of the Whitmans." (Doc. 1 ¶¶ 1, 3). The Government alleges that All Out and ULOC are alter egos of the Whitmans and that Defendant Zachary Whitman, Zamekri, and CWW are nominees of the Whitmans. (*See id.*).

The Government filed proof of service as to Defendants Michelle Lewis and Charles Briley on May 19, 2023, as to All Out on May 23, 2023, as to CWW, ULOC, and Zamekri on May 30, 2023. (Docs. 9–14). These defendants did not answer or otherwise respond to the Complaint. (*See* Docket). On June 28, 2023, the Government filed an Application for

Clerk's Entry of Default as to Defendants Michelle Lewis; Charles Briley; ULOC, LLC, Zamekri, LLC; All Out Diversified Services, LLC a.ka. AODS, LLC; and CWW & Wade LLC. (Doc. 23). The Clerk's Office entered default against these defendants (Defaulting Defendants) the same day. (*See* Docket). On July 30, 2024, the Government filed a Motion for Default Judgment (Doc. 58). The Defendants listed in the Government's Motion for Default, Michelle Lewis; Charles Briley; ULOC, LLC, Zamekri, LLC; All Out Diversified Services, LLC a.ka. AODS, LLC; and CWW & Wade LLC (Defaulting Defendants), did not respond to the Motion for Default. (*See* Docket). The Government filed also a Motion for Summary Judgment Against Defendants Christopher Whitman and Defendant Zachary Whitman (Doc. 60) on July 30, 2024. Defendant Christopher Whitman did not respond to the Government's Motion for Summary Judgment Defendant. (*See* Docket). Defendant Zachary Whitman responded to the Government's Motion for Summary Judgment on August 22, 2024. (Docs. 62, 63). The Government replied in support of its Motion for Summary Judgment on September 4, 2024. (Doc. 66).

On July 30, 2024, Defendant Zachary Whitman filed a Motion for Summary Judgment (Doc. 59). On August 19, 2024, the Government responded to Defendant Zachary Whitman's Motion for Summary Judgment. (Doc. 62). Defendant Zachary Whitman replied in support of his Motion for Summary Judgment on September 6, 2024. (Doc. 67). Defendant Christopher Whitman filed a Motion for Summary Judgment (Doc. 64) on August 26, 2024. The Government responded to Defendant Christopher Whitman's Whitman's Motion for Summary Judgment on September 13, 2024, and Defendant Christopher Whitman replied on November 25, 2024. (Docs. 68, 73).

## DISCUSSION

### I.    Government's Motion for Default Judgment

The Government moves for default judgment against Defendants Michelle Lewis, Charles Briley, ULOC, LLC, Zamekri, LLC, All Out, and CWW and seeks a determination that (1) "ULOC and ALL Out are alter egos of Christopher and Rebecca Whtiman and that the assets of ULOC and All Out may be used to satisfy the Whitmans' tax liabilities;" (2) "Zamekri, LLC and CWW . . . are nominees of Chrisopher Whitman that hold bare legal

title to real property for which Defendant Christopher Whitman is the true and equitable owner;" and (3) "Michelle Lewis and Charles Briley have no interest in the" 1919 Elkhorn Property. (Doc. 58 at 2).

District courts may enter judgment by default against a defendant that fails "to plead or defend[.]" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (per curiam) (citing Fed. R. Civ. P. 55(b)(2)). Prior to obtaining a default judgment, the plaintiff seeking judgment must first seek an entry of default. *See* Fed. R. Civ. P. 55(a). The Clerk's Office filed the entry of default in this case on June 28, 2023. (*See* Docket). The mere entry of default by the Clerk, however, "does not in itself warrant the [C]ourt in entering a default judgment." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Stegeman v. Georgia*, 290 F. App'x 320, 323 (11th Cir. 2008) (per curiam). The Eleventh Circuit has a "strong policy of determining cases on their merits," so "default judgments are generally disfavored." *Surtain*, 789 F.3d at 1244–45 (quoting *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)). Default judgment is appropriate only when the pleadings contain "a sufficient basis" for the judgment such that they could "survive a motion to dismiss for failure to state a claim." *Id.* at 1245 (citation omitted). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* (alteration in original) (quoting *Cotton v. Mass. Mut. Life Ins.*, 402 F.3d 1267, 1278 (11th Cir. 2005)).

When "considering any default judgment, the Court must [also] consider (1) jurisdiction, (2) liability, and (3) damages." *Johnson v. Rammage*, No. 5:06-CV-057 (CAR), 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)). Given the nature of this action, the issue before the Court is whether the Defaulting Defendants have interests in the five properties upon which the Government seeks to attach federal tax liens that would preclude foreclosure. When granting a default judgment, the Court must hold an evidentiary hearing to determine damages unless all essential evidence is already on the record. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

### A. Jurisdiction

The Complaint establishes that the Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1340, which provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue" and to 28 U.S.C. § 1345, which provides that "[e]xcept as otherwise provided by Act of Congress, the district court shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." This case was brought by the United States and relates to the collection unpaid taxes from the Whitmans, the recovery of unpaid trust recovery penalties, and the foreclosure of tax liens on five properties to collect on the unpaid taxes and penalties, all pursuant to the tax code. (Doc. 1). Furthermore "[t]he district courts of the United States . . . shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, . . . and to order such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. 7402. Accordingly, the Court has subject matter jurisdiction over this action.

The record also establishes that the Court has personal jurisdiction over the Defaulting Defendants. According to the well pleaded facts of the Complaint, All Out, ULOC, Zamekri, and CWW are limited liability companies organized in the state of Georgia; and, at one time, the Defaulting Defendants owned the subject properties, which are all located in either Dougherty or Worth Counties. (Doc. 1 ¶¶ 11–13). Thus, the companies have sufficient contacts with the state of Georgia to support personal jurisdiction. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). Furthermore, Briley and Lewis are tenants living at 1919 Elkhorn, Lane in Albany, Georgia, and are thus citizens of Georgia subject to this Court's jurisdiction. (*Id.* ¶¶ 17–18).

### B. Sufficiency of Pleadings

Under the Internal Revenue Code, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such

person." 26 U.S.C. § 6321. The Government alleges that tax liens arose on five properties on the dates that the IRS assessed the unpaid taxes and the trust fund recover penalties against the Whitmans: the Sylvester Property, the Doerun Property, the 1912 Elkhorn Property, the 1919 Elkhorn Property, and the Mock Property. (Doc. 1). In this action, the Government asks the Court to "[o]rder that the federal tax liens . . . be foreclosed and that the subject properties be sold according to law, free and clear of the liens and claims of the parties." (*Id.* at 19). The Defaulting Defendants, however, all have possible interests in these properties. (*See id.* 48–76). Thus, to collect by foreclosing on the liens, the Government must show that the properties "belong[] to" the Whitmans and not the Defaulting Defendants. 26 U.S.C. § 6321. To do so, it can either show that one or more of the Defaulting Defendants does not have an interest in the property or is a nominee or alter ego of the Whitmans because "[p]roperty of [a] nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability." *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977)).

The Government alleges that ULOC and All Out are alter egos of Defendant Christopher Whitman such that the properties owned by these entities can be foreclosed on by the Government to pay Defendant Christopher Whitman's unpaid federal taxes and penalties. (Doc. 1; Doc. 58 at 9–12). The Government alleges that Zamekri and CWW are nominees of Defendant Christopher Whitman such that the properties owned by these entities can be foreclosed on by the Government to pay Defendant Christopher Whitman's unpaid federal taxes and penalties. (Doc. 1; Doc. 58 at 12–15). Finally, the Government alleges that Briley and Lewis, as tenants of the 1919 Elkhorn Property, have no ownership interest preventing foreclosure. (Doc. 1; Doc. 58 at 15–16).

### 1. Defendants ULOC and All Out

The Government alleges in the Complaint that ULOC and All Out are alter egos of Defendant Christopher Whitman such that the Sylvester Property, and Doerun and Mock Properties, respectively "are available to satisfy the Whitman's unpaid federal income tax liabilities and trust fund recovery penalty assessments." (Doc. 1 ¶ 52; *see also id.* ¶¶ 57,

62, 73, 75). "Property held by an 'alter ego' of the taxpayer is subject to collection for the taxpayer's tax liability." *Eckhardt v. United States*, 463 F. App'x 852, 855 (2012) (per curiam). Federal courts apply state law to determine whether a party is the alter ego of the taxpayer, such that they are liable for his tax liabilities. *Old W. Annuity & Life Ins. v. Appollo Grp.*, 605 F.3d 856, 861 (11th Cir. 2010) (per curiam).

In Georgia, to demonstrate alter ego liability, a party must show that the individual at issue "disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist." *Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005) (quoting *Heyde v. Xtraman, Inc.*, 404 S.E.2d 607, 610 (Ga. Ct. App. 1991)) (other citations omitted). Georgia courts apply the doctrine "to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Id.* (quoting *Heyde*, 404 S.E.2d at 610). Evidence that shows that a company is the alter ego of an individual includes "the owner using funds for personal expenses . . . or the owner treating all his companies and himself as one unit." *McCommons v. White*, 899 S.E.2d 731, 739, 740 (Ga. Ct. App. 2024) (quoting *Rasheeed v. Klopp Enters.*, 622 S.E.2d 442 (Ga. Ct. App. 2005)). Furthermore, Georgia courts only apply the alter ego doctrine, which is governed by equitable principles, and pierce the corporate veil "in the absence of adequate remedies at law." *Thompson*, 612 S.E.2d at 299 (quoting *Acree v. McMahan*, 585 S.E.2d 873, 875 (2003)) (other citations omitted).The Government argues in the Motion for Default Judgment that "[i]mposing alter ego liability is appropriate here because there is a complete unity of interest between ULOC, All Out, and the Whitmans and because [Defendant Christopher] Whitman established ULOC and All Out to perpetuate his fraud and place the fruits of his ill-gotten gains beyond the reach of his creditors[.]" (Doc. 58 at 10).

### a. ULOC

The tax lien on the Sylvester Property will only attach if ULOC, the owner of the property, is found to be the alter ego of the Whitmans. According to the well-pleaded facts

in the Complaint, Defendant Christopher Whitman organized ULOC in 2011. (Doc. 1 ¶ 11). The Whitmans purchased the Sylvester Property on May 11, 1993, and sold the property to ULOC for ten dollars on May 17, 2011. (*Id.* ¶¶ 49–50; Doc. 60-13). Furthermore, the Complaint alleges the following facts in support of the alter ego theory of liability: (1) Defendant Christopher Whitman organized ULOC, a limited liability company; (2) the Whitmans "comingled their funds with the funds of ULOC" by depositing checks made out to ULOC into the Whitman's personal bank account; (3) Defendant Christopher Whitman "signed deeds on behalf of ULOC to transfer properties[;]" (4) ULOC has no Employer Identification Number; (5) ULOC holds title to the Whitman's personal residence; (6) All Out, allegedly another alter ego of the Whitmans, pays ULOC's expenses; and (7) Defendant Christopher Whitman transferred the Sylvester Property to ULOC "as he was accruing the tax liabilities at issue and as he engaged in the bribery and fraud scheme for which he was convicted." (Doc. 1 ¶ 50).

Considering the well pleaded facts of the Complaint, the Court determines that there is such a "unity of interests" between ULOC and the Whitmans and that the Whitmans made ULOC "a mere instrumentality for the transaction of [their] own affairs" such that ULOC is an alter ego of the Whitmans. *See Thompson*, 612 S.E.2d at 299. First, the Whitmans abused the corporate form of ULOC to pay personal expenses. (Doc. 58 ¶ 50). They commingled funds by depositing checks made out to ULOC into their own bank account. *See McCommons*, 899 S.E.2d at 739 (explaining "evidence of commingling funds between the businesses and of [owner] using company funds for personal expenses" supporting piercing corporate veil); *Sheppard v. Tribble Heating & Air Conditioning*, 294 S.E.2d 572, 573 (1982) (finding corporation was alter ego of individual where individual bought property in his own name, used corporation to build houses, and then sold the houses on the land, depositing resulting checks into his personal bank account without paying creditors). Furthermore, as the criminal investigation and prosecution proceeded, the Whitmans sold their personal residence to ULOC for "no consideration[,]" but Defendant Rebecca Whitman still lives on the property—evincing an intent to protect the properties from foreclosure. (*See* Doc. 1 ¶¶ 9, 50); *see Cobra 4 Enterps. v. Powell-Newman*,

785 S.E.2d 556, 613 (Ga. Ct. App. 2016) (determining corporations to be alter ego of individual owner where owner "used them to protect his assets" and sold assets between corporate entities for "only a dollar a piece"). Finally, the Court finds that dissolving the corporate form would "remedy injustice." *Thompson*, 612 S.E.2d at 299.

Based on the allegations in the complaint, Defendant Christopher Whitman engaged in a fraud and bribery scheme for which he was convicted, and the Whitmans filed belated tax returns from the years that the fraud was ongoing demonstrating a nine-million-dollar tax bill. (Doc. 1 ¶¶ 7, 21–28). The Whitmans then sold their home to a corporation they wholly owned, avoiding paying the debt owed to the Government, while continuing to use the property as their own. (Doc. 1 ¶¶ 9–11, 48–54). Thus, the Court finds that the Whitmans have used ULOC "in order to defeat justice [and] perpetrate fraud[.]" *Thompson*, 612 S.E.2d at 299. Accordingly, ULOC is the alter ego of the Whitmans and its interest in the Sylvester property does not prevent the attachment of the tax liens.

### b. All Out

The tax lien on the Doerun and Mock Properties will only attach if ULOC, the owner of the property, is found to be the alter ego of the Whitmans. According to the Complaint, Defendant Christopher Whitman organized All Out in 2013. (Doc. 1 ¶ 10). All Out purchased the Doerun Property on August 10, 2014, and sold it to Defendant Zachary Whitman[2] "for no consideration" on December 30, 2015. (*Id.* ¶¶ 55, 59). All Out purchased the Mock Property on November 18, 2014. (*Id.* ¶ 71). The Government presents the following facts in support of the alter ego theory of liability: (1) All Out's "business address is the home address of [Defendant] Rebecca Whitman"; the Whitmans commingled their funds with the funds of All Out by using All Out's funds to pay for Defendant "Rebecca Whitman's personal expenses, including lawn care, insurance, and taxes, from its bank accounts;" (2) Defendant Christopher Whitman transferred title of his personal vehicle to

---

[2] The Court will consider whether Defendant Zachary Whitman is a nominee of All Out in the section on the Motion for Summary Judgment. For now, the Court only considers whether All Out's interest in the Doerun Property prevents foreclosure.

All Out; (3) All Out never filed tax returns; and (4) Defendant Rebecca Whitman serves as All Out's manager. (*Id.* ¶ 55).

Considering the well-pled facts in the Complaint, the Government has demonstrated that there is such a "unity of interests" between All Out and the Whitmans and that the Whitmans made All Out "a mere instrumentality for the transaction of their own affairs" such that All Out is the alter ego of the Whitmans. *See Thompson*, 612 S.E.2d at 299. First, as was the case with ULOC, the Whitmans abused the corporate form by commingling personal and corporate funds. *See McCommons*, 899 S.E.2d at 739. They used All Out's corporate funds to pay for personal expenses, including "lawn care, insurance, and taxes[.]" (Doc. 1 ¶ 55). Furthermore, Defendant Christopher Whitman used the corporate form to protect personal assets when he transferred title of his personal vehicle to All Out. (*Id.*); *see Powell-Newman*, 785 S.E.2d at 613. The Whitmans also failed to follow corporate formalities, including filing tax returns for the company. (Doc. 1 ¶ 55). According to the Complaint, near in time to the prosecution of Defendant Christopher Whitman's fraud and bribery scheme, Defendant Christopher Whitman formed a limited liability company and started to purchase properties, including the Doerun and Mock properties, with the gains of the scheme. (*Id.* ¶ 50). As a result, tax liabilities resulting from the scheme cannot be recovered from the Whitmans personally and dissolving the corporate form would serve to "remedy injustice[.]" *Thompson*, 612 S.E.2d at 299. The Court finds that the Whitmans have used All Out "in order to defeat justice [and] perpetrate fraud[.]" *See id.* at 299. Accordingly, All Out is the alter ego of the Whitmans and its interest in the Doerun and Mock properties does not prevent foreclosure of the tax liens.

### 2. Zamekri and CWW

The Government alleges in the Complaint that Zamekri and CWW are nominees of Defendant Christopher Whitman such that "[t]he federal tax liens against [Defendant] Christopher Whitman[,] CWW[, and Zamekri]. . . attach" to the Elkhorn Properties which "can be foreclosed and then sold pursuant to 26 U.S.C. § 7403(b)." (Doc. 1 ¶¶ 64–70). Defendant Christopher Whitman sold the Elkhorn Properties to Zamekri on April 29, 2011, and Zamekri sold the Elkhorn Properties to CWW on May 3, 2012. (*Id.* ¶¶ 64, 67). The

13

Government filed tax liens against CWW and Zamekri as nominees of Defendant Christopher Whitman on October 21, 2022. (*Id.* ¶ 46). As Defendant Christopher Whitman transferred the properties first to Zamekri and then Zamekri transferred the properties to CWW, for the tax lien to attach, both Zamekri and CWW must be nominees of Defendant Christopher Whitman.  (*Id.* ¶¶ 63–70)

As discussed above, when a person fails to pay taxes "the amount . . . shall be a lien in favor of the United States upon all property and rights to property . . . belonging to such person." 26 U.S.C. 6321. "'Property' and 'rights to property' . . . include 'not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer.'" *May v. United States*, No. 07-10531, 2007 WL 3287513, at *1 (11th Cir. Nov. 8, 2007) (per curiam) (quoting *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005) (other citations omitted)). A nominee owner "is one who holds bare legal title to property for the benefit of another." *Id.* at *1 (quoting *Scoville v. United States*, 250 F.3d 1198, 1201 (8th Cir. 2001) (other citation omitted)). In other words, "the federal tax lien extends to property 'actually' owned by the taxpayer even though a third party holds 'legal' title to the property as nominee." *Wilson v. United States*, 644 F. Supp. 3d 1344, 1351 (N.D. Ga. 2022) (quoting IRM § 5.17.2.5.7.2).

"Since the federal tax lien statute itself creates no property rights but merely attaches consequences, federally defined, to rights created under state law," the district court is obliged to "'look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach[.]" *May*, 2007 WL 3287513, at *2 (internal quotation marks omitted) (quoting *United States v. Craft*, 535 U.S. 274, 278 (2002)). Then, once a taxpayer's interest in the property under state law is identified, the district court looks to "federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.* (quoting *Craft*, 335 U.S. at 278). In other words, the Court looks to state law to determine whether the taxpayer has a property interest under a nominee theory and

then to federal law to determine whether the state created property right fits with the statutory framework of the tax code.

Where state law fails to delineate a clear test regarding a property interest created by a nominee relationship, district courts consider the federal common law factors for determining whether a nominee relationship exists. *Id.* at *2; *Wilson*, 644 F. Supp. 3d at 1351–52 (collecting cases); *United States v. Griggers*, No. 5:22-cv-310 (MTT), 2024 WL 4265254, at *14 (M.D. Ga. Sept. 23, 2024).

> District courts in the Eleventh Circuit consider the following factors in determining whether property is being held by a nominee of the taxpayer: (1) whether the taxpayer exercised dominion and control over the property; (2) whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; (3) whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; (4) whether a close relationship exists between the taxpayer and the nominee; and (5) whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of the funds for payments of the expenses.

*Wilson*, 644 F. Supp. 3d at 1352 (quoting *United States v. Wilkins*, No. 814-CV-993-EAK-JSS, 2019 WL 1258510, at *18 (M.D. Fla. Feb 26, 2019) (other citations omitted)); *May*, 2007 WL 3287513 at *2; *Griggers*, 2024 WL 4265254, at *14. "Not all of the foregoing factors are of equal weight, and they should not be applied rigidly or mechanically, as no one factor is determinative." *Wilson*, 644 F. Supp. 3d at 1352 (quoting *Wilkins*, 2019 WL 1258510, at *18). "The most critical issue is *who has substantial control over the property.*" *Id.* (quoting *Wilkins*, 2019 WL 1258510, at *18).

"Georgia law recognizes that true ownership or an ownership interest may rest with a party other than the titleholder of record, but there is no bright-line test for determining nominee status." *Griggers*, 2024 WL 4265254, at *15. As other district courts in the state have noted, the closest comparison to nominee ownership in Georgia law is that of implied trusts. *See id.*; *Wilson*, 644 F. Supp. 3d at 1352. When considering whether state law creates an ownership interest under a nominee theory, "[i]t would be erroneous to focus on the

15

label applied to the doctrine by [state] courts, as opposed to its substance" and thus "federal appellate courts have deemed state law to bear on the nominee question even when the state courts have called its something else." *May v. A Parcel of Land*, 458 F. Supp. 2d 1324, 1337 n.22 (S.D. Ala. 2006), *aff'd sub nom. May*, 2007 WL 3287513 (11th Cir. Nov. 8, 2007).

The law of implied trusts is analogous to the nominee framework. *See Wilson*, 644 F. Supp. 3d at 1353; *Griggers*, 2024 WL 4265254, at *15. Georgia law recognizes two types of implied trusts: constructive trusts and resulting trusts. O.C.G.A. § 53-12-2(5). A constructive trust is a trust "implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. 53-12-132 (a). A constructive trust "is a remedy created by a court in equity to prevent unjust enrichment," but unjust enrichment "does not apply when the conferred benefit was a gift or voluntary payment." *Robers v. Smith*, 801 S.E.2d 915, 921 (2017) (first quoting *Reeves v. Newman*, 695 S.E.2d 626, 627 n.2 (Ga. Ct. App. 2010); and then citing *Crook v. Foster*, 775 S.E.2d 286, 289 (Ga. Ct. App. 2015)). Thus, here where the well pleaded allegations indicate that Defendant Christopher Whitman voluntarily transferred the Elkhorn Properties for no consideration, the constructive trust framework does not apply. *See Wilson*, 644 F. Supp. 3d at 1353.

A resulting trust is a trust "implied for the benefit of the [creator of the trust] . . . .when it is determined that [he] did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property[.]" O.C.G.A. § 53-12-130. Moreover, a resulting trust is created where (1) "[a] trust is created but fails . . . for any reason[,]" (2) "[a] trust is fully performed without exhausting all the trust property[,]" or (3) [a] purchase money resulting trust . . . is established. *Id.* A purchase money resulting trust is "a resulting trust implied for the benefit of the person paying consideration for the transfer to another person of legal title to real or personal property." O.C.G.A. § 53-12-131. Furthermore, "[a] resulting trust which arises solely from the payment of the purchase price is not created, unless the purchase money is paid either before or at the time of the

purchase." *Jackson v. Faver*, 77 S.E.2d 728, 738 (Ga. 1953) (quoting *Hall v. Edwards*, 79 S.E. 852, 853 (Ga. 1913) (other citations omitted)). A purchase money resulting trust is the most analogous to the nominee framework under Georgia law. *See Wilson*, 44 F. Supp. 3d at 1353; *Griggers*, 2024 WL 4265254, at *15 (finding implied trusts to be the most analogous to the nominee framework but finding that neither resulting nor constructive trusts "precisely fit the facts of th[e] case" (citations omitted)). Here, the well-pled allegations establish that Defendant Christopher Whitman paid consideration for the property and later transferred the property to Zamekri for no consideration and that Zamekri subsequently transferred the property to CWW for no consideration. (Doc. 1 ¶¶ 64, 67). Georgia courts have explained that a court "may consider all facts and circumstances surrounding the transaction to determine whether the parties intended a purchase money resulting trust[,]" and thus "[c]onsideration of the common law nominee ownership factors is plainly permissible under this broad framework." *Wilson*, 644 F. Supp. 3d at 1356 (quoting *In re McFarland*, 619 F. App'x 962, 968–69 (11th Cir. 2015) (per curiam)); *see also Harrell v. Harrell*, 290 S.E.2d 906, 907 (Ga. 1982). Thus, the Court will consider the federal common law factors below to determine if a purchase money resulting trust was created making Zamekri and CWW Defendant Christopher Whitman's nominees.

### a. Zamekri

Considering the well-pleaded allegations in the Complaint and the federal common law factors, a purchase money resulting trust was created and Zamekri is Defendant Christopher Whitman's nominee. As discussed above, the Court applies the following factors to determine whether Zamekri is Chrisopher Whitman's nominee: (1) whether the taxpayer exercised dominion and control over the property; (2) whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; (3) whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; (4) whether a close relationship exists between the taxpayer and the nominee; and (5) whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of the funds for payments of the expenses. *See Wilson*, 644 F. Supp. 3d at 1352.

The first factor, whether the taxpayer exercised dominion and control, weighs in favor of a nominee relationship. Defendant Christopher Whitman had control over Zamekri as he organized Zamekri and served as its operating manager. (Doc. 1 ¶ 64). Defendant Christopher Whitman used his control over Zamekri to cause Zamekri to—for little to no consideration—buy the Elkhorn Properties that Defendant Christopher Whitman had acquired with the proceeds of his fraud. (*Id.*). Defendant Christopher Whitmen then caused Zamekri to resell the Elkhorn Properties for little to no consideration. *Id.* Furthermore, as organizer and operating manager of Zamekri, Defendant Christopher Whitman received rental income from the properties held by Zamekri. (*Id.*). As to the second factor, the Complaint sets forth facts to establish that the property was placed in the name of Zamekri in the anticipation of collection activity. (*See id.*). Defendant Christopher Whitman sold the Elkhorn Properties for no consideration in 2011 around the time that Defendant Christopher Whitman was operating a bribery and fraud scheme and accrued the tax liabilities and penalties at issue in this case. (*See id.* ¶¶ 21–46, 64). The third factor clearly weighs in favor of a nominee relationship as the property was transferred for minimal consideration. The fourth factor, whether there is a close relationship between the taxpayer and the nominee, also weighs in favor of the existence of a nominee relationship because Defendant Christopher Whitman organized and was the operating manager of Zamekri. (*See id.* ¶ 64). As to the fifth factor, the Government does not explain in the Complaint whether Defendant Christopher Whitman paid for the upkeep of the Elkhorn Properties. (*See id*).

Neither Defendant Christopher Whitman nor Zamekri respond to these allegations to dispute that Zamekri is a nominee of Defendant Christopher Whitman. (*See* Docket). Upon evaluation of all five factors, the Court determines that when Zamekri owned the Elkhorn Properties Defendant Christopher Whitman had a beneficial interest in the properties—creating a purchase money resulting trust and a nominee relationship. Furthermore, Defendant Christopher Whitman's interest in the Elkhorn Properties qualifies as his "property" or "right to property" under 26 U.S.C. § 6321. As discussed above, the Eleventh Circuit has recognized that "'property' and 'rights to property'" include property

"held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer.'" *May*, 2007 WL 3287513, at *1 (internal quotation marks and citations omiotted). Accordingly, Defendant Christopher Whitman's interest "falls squarely within the parameters of the federal nominee doctrine." *See Griggers*, 2024 WL 4265254, at *18.

### b. CWW

Considering the well-pleaded allegations in the Complaint, a purchase money resulting trust was created when Zamekri transferred the property to CWW, and CWW is also Defendant Christopher Whitman's nominee. Again, the first *Wilson* factor, whether the taxpayer exercised dominion and control over the property weighs in favor of a nominee relationship. *Wilson*, 644 F. Supp. 3d at 1352. Defendant Christopher Whitman organized CWW and served as its operating manager. (Doc. 1 ¶ 67). He used that control over CWW to maintain control and dominion over the Elkhorn Properties. (*See id*). Using his position, Defendant Christopher Whitman caused CWW to buy the Elkhorn Properties for minimal consideration. (*Id.*). Furthermore, as the organizer and operating manager of CWW, Defendant Christopher Whitman received rental income from the properties held by CWW. *Id.* The second factor—that the property was placed in the name of CWW in the anticipation of collection activity—is also supported by the well pled allegations of the Complaint. *See Wilson*, 644 F. Supp. 3d at 1352; (*see id.*). Defendant Christopher Whitman caused the property to be sold in May 2012, around the time that he was operating the bribery and fraud scheme, accruing the tax liabilities and penalties at issue, and when the Government began to investigate his nonpayment of taxes. (*See* Doc. 1 ¶¶ 21–46, 67). The third factor also weighs in favor of a nominee relationship as the property was transferred for minimal consideration. The fourth factor, whether there is a close relationship between the taxpayer and the nominee, also weighs in favor of the existence of a nominee relationship because Defendant Christopher Whitman organized and was the operating manager of CWW. (*Id.* ¶ 67). As to the fifth factor, the Government does not explain in the Complaint whether Defendant Christopher Whitman paid for the upkeep of the Elkhorn Properties, and thus this factor does not lead the Court in either direction. (*See id.*).

Neither Defendant Christopher Whitman nor CWW respond to these allegations to dispute that CWW is a nominee of Defendant Christopher Whitman. (*See* Docket). Upon evaluation of all five factors, the Court determines that Defendant Christopher Whitman maintained a beneficial interest in the Elkhorn Properties after transferring them to Zamekri and then to CWW—creating a purchase money resulting trust and a nominee relationship. Furthermore, Defendant Christopher Whitman's interest in the Elkhorn Properties qualifies as his "property" or "right to property" under 26 U.S.C. § 6321. As discussed above, the Eleventh Circuit has recognized that "[p]roperty and rights to property" include property "held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer." *May*, 2007 WL 3287513, at *1 (internal quotation marks and citations omitted). Accordingly, Defendant Christopher Whitman's interest "falls squarely within the parameters of the federal nominee doctrine." *See Griggers*¸ 2024 WL 4265254, at *18. Thus, Defendant Christopher Whitman maintains an ownership interest in the property, rather than CWW, such that the interest of CWW does not prevent foreclosure.

### C. Briley and Lewis's Interest in the Elkhorn Properties

Taking the well-pleaded facts in the Complaint as true, Briley and Lewis are tenants of the 1919 Elkhorn Property and do not have an interest in the property that would prevent foreclosure. A tenant has a "right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor" but does not have an ownership interest. O.C.G.A. § 44-7-1(a). Briley and Lewis have not appeared or presented any other possible interest in the 1919 Elkhorn Property.[3] (*See* Docket). Based on the well-pleaded allegations of the Complaint, neither Briley nor Lewis have a claim to the property that would prevent a foreclosure sale. *See United States v. Moliver*, No. 18-21704-CIV-ALTONAGA/Goodman, 2018 WL 6920376, at *2 (S.D. Fla. Sept. 26, 2018) (taking the facts pled by the Government in the complaint as true that the property was free and clear

---

[3]    Furthermore, Briley and Lewis are not active-duty military, which can protect a servicemember from default judgment. (Docs. 58-2, 58-3).

of an interest from defaulting defendants because they did not appear before the court to challenge the assertion).

Accordingly, the Court **GRANTS** the Motion for Default Judgment (Doc. 58) against the Defaulting Defendants. Thus, the Defaulting Defendants do not have claims in the five properties at issue to prevent foreclosure.

## II.    Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). At summary judgment, the Court views the evidence "in the light most favorable to the non-moving party" and resolves factual disputes for the nonmoving party when doing so is supported by sufficient evidence. *Gogel*, 967 F.3d at 1134 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007)); *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted); *Whitehead*, 979 F.3d at 1328. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of

some element of its case on which it bears the ultimate burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam) (citation omitted). If the movant meets their initial burden, the nonmoving party must demonstrate that there is a genuine dispute for trial. *Whitehead*, 979 F.3d at 1328 (citing *Celotex Corp.*, 447 U.S. at 324). The nonmovant must "go beyond the pleadings and . . . present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 557 (11th Cir. 2014) (per curiam) (citing *Celotex Corp.*, 477 U.S. at 324). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

"Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed . . . ." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (per curiam) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)). Cross motions may, however, "be probative of the nonexistence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* at 1555–56. Nevertheless, the Court must evaluate each motion separately, "as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004); *see also D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011) ("When there are cross-motions for summary judgment, the court must consider each motion separately, drawing all inferences in favor of each non-moving party in turn." (citation omitted)).

Under Middle District of Georgia Local Rule 56, "[t]he movant for summary judgment" must submit a "separate and concise statement of the material facts to which the

movant contends there is no genuine dispute to be tried." M.D. Ga. L.R. 56. Local Rule 56 requires the non-movant to respond "to each of the movant's numbered material facts" and warns that "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of the materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." *Id.*; *see Mason*, 24 F. Supp. 3d at 1260. Additionally, Local Rule 56 provides that "documents and other record material relied upon by a party moving for or opposing a motion for summary judgment . . . be clearly identified for the court" by citations to "dates, specific page numbers, and line numbers" when possible. M.D. Ga. L.R. 56. Neither Defendant Christopher Whitman nor Defendant Zachary Whitman responded to the Government's Statement of Material Facts. (*See Docket*). Thus, where appropriate, the Court will deem the facts in the Government's Statement of Material facts to be admitted.

### A. Government's Motion for Summary Judgment

The Government argues that is entitled to judgment as a matter of law such that the Whitmans are liable for the 2009 through 2013 tax assessments and for the trust fund recovery penalties for the years 2011 and 2012 and that tax liens attach to the Sylvester Property, Doerun Property, Elkhorn Properties, and the Mock Property. (Doc. 60-1 at 15–16).

As a preliminary matter, the Court finds that the United States timely commenced this suit. The Government must file a suit to collect unpaid taxes within ten years of the assessment of the tax. 26 U.S.C. § 6502. When a taxpayer requests a hearing regarding the unpaid taxes the "running of any period of limitations under section 6502 . . . shall be suspended for the period during which such hearing, and appeals therein, are pending." 26 U.S.C. § 6330(e)(1). In this case, the unpaid taxes for the tax years 2009, 2010, and 2011 and the trust fund recovery penalties for the year 2011 were assessed more than ten years before this action was filed. (*See* Doc. 60-6; Doc. 1). But the Whitmans requested a collection due process hearing regarding the unpaid income taxes on December 23, 2013, for the 2009, 2010, and 2011 tax years, and a hearing as to the 2011 trust fund recovery penalties on June 14, 2013. (Doc. 60-6 at 5–6, 15, 21–22, 28–29; Docs. 60-7, 60-8). The

hearing requests related to the income taxes were pending through June 19, 2014, and the hearing request related to the trust fund recovery penalties was pending through July 2, 2014. (Doc. 60-6 at 5–6, 15, 21–22, 28–29; Docs. 60-7, 60-8). Thus, the statute of limitations period for the unpaid taxes was suspended for 178 days, and the statute of limitations period for the trust fund recovery penalties for the year 2011 was suspended for 368 days. The Government was required to file the case by April 11, 2023, as to the 2009 unpaid income taxes, which were the earliest taxes assessed in this case, and April 25, 2024, as to the 2011 trust fund recovery penalties. The Government timely filed this case on April 11, 2023. (*See* Docket).

### 1. Tax Assessment for Years 2009 through 2013

The Government seeks judgment as a matter of law that the Whitmans are liable for the unpaid federal income taxes assessed by the Government for the 2009, 2001, 2011, 2012, and 2013 tax years. (*See* Doc. 60-1). The Whitmans originally filed tax returns showing zero dollars in income. (Doc. 60-6 at 3, 13). They filed amended tax returns on August 31, 2012. (*Id.* at 4, 13). Upon review of the amended tax returns, the Government determined in the assessments that the Whitmans owed $9,782,552.77 in tax liabilities from the years at issue. (*Id.*; Doc. 60-5 ¶¶ 2, 4). The Government then sent a notice of assessment and demand for payment to the Whitmans. (Doc. 60-5 ¶¶ 2–3).

"In reducing assessment to judgment, the Government must first prove that the assessment was properly made" and is outstanding. *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006) (citing *Palmer v. United States*, 116 F.3d 1309, 1312 (9th Cir. 1997)); *Griggers*, 2024 WL 4265254, at *9 (citation omitted). If the Government files IRS Form 4340, "Certificate of Assessments, Payments, and Other Specified Matters," it establishes the presumption that the assessment was properly made. *White*, 466 F.3d at 1248 (citing *Roberts v. C.I.R.*, 329 F.3d 1224, 1227 (11th Cir. 2003) (per curiam)). Once the Government files IRS Form 4340, the burden shifts to the taxpayer to "prove that the assessment is erroneous in order to prevail." *Id.* (citing *Stallard v. United States*, 12 F.3d 489, 493 (5th Cir. 1994) (per curiam)). The taxpayer can do so by showing that the assessment is arbitrary or erroneous or that the IRS did not properly issue a notice of

deficiency. *See Olster v. Comm'r of Internal Revenue Serv.*, 751 F.2d 1168, 1174 (11th Cir. 1985). The Government has submitted certified copies of form 4340 for the 2009, 2010, 2011, 2012, and 2013 tax years. (Doc. 60-6). It has also produced a declaration from Revenue Officer Susan Freeman verifying the calculations and account statements for each assessment showing unpaid balances. (Doc. 60-3 ¶¶ 9–11). The assessments are thus presumptively correct, and the burden shifts to the Whitmans to challenge the validity of the assessments.

Neither Defendant Christopher Whitman nor Defendant Rebecca Whitman responded to the Motion for Summary Judgment. (*See* Docket). Nor did Defendant Christopher Whitman respond to the Government's Statement of Material Facts or provide any supporting documents to demonstrate to the Court that the Government's tax assessment is inaccurate. (*See* Docket). Instead, Defendant Christopher Whitman filed a separate Motion for Summary Judgment, arguing that the Government "has not provided sufficient factual allegations to support its claim against" him and that "the absence of a genuine dispute of material fact renders summary judgment [in his favor] appropriate." (Doc. 64-1 at 1). Such conclusory arguments and allegations are not sufficient to create a genuine issue of material fact to defeat summary judgment in the Government's favor. Having reviewed the Government's Motion and the record, there is no genuine issue of material fact as to the issue of whether Defendants Rebecca Whitman and Christopher Whitman are liable for the unpaid taxes for the years 2009 through 2012.

### 2. Trust Fund Recovery Penalties

According to the Government, the Whitmans, as corporate officers of United Industrial, owe Trust Fund Recovery Penalties for all quarters for the year 2011 and the first two quarters of 2012. (Doc. 60-1 at 8). Trust Fund Recovery Penalties "are not a penalty but a statutory means for the IRS to pursue trust funds, i.e., those that employers withhold and pay directly to the government." *United States v. Scott*, 825 F.3d 1275, 1279 (11th Cir. 2016). Pursuant to 26 U.S.C. § 6672, "a person responsible for paying [employees'] taxes is personally liable if he" or she "willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade

or defeat any such tax" and is "liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over." *Id.* (citing *Thosteson v. United States*, 331 F.3d 1294, 1298–99 (11th Cir. 2003)); 26 U.S.C. § 6672.

A responsible person is an "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). The Eleventh Circuit has "interpreted the statute broadly" and has "stated that responsibility 'is a matter of status duty, and authority[.]" *Scott*, 825 F.3d at 1279 (citations omitted). Furthermore, "[i]ndicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *Id.* (alteration in original) (quoting *George v. United States*, 819 F.2d 1008, 1011 (11th Cir. 1987)). "The essential question is whether the person had sufficient control over corporate affairs to avoid non-payment of the employment taxes." *Id.* (citing *George*, 918 F.2d at 1011).

The Government argues that the Whitmans were responsible officers of United Industrial because Defendant Christopher Whitman incorporated United Industrial, Defendant Rebecca Whitman served as the president, and Defendant Christopher Whitman served as the vice president. (Doc. 60-1 at 9). IRS Agent Freeman submitted a declaration asserting that the Whitmans are "responsible officers of United Industrial" and the Government submitted two copies of a document—both sent to Defendant Rebecca Whitman—entitled "Recommendation re: Trust Fund Recovery Penalty Assessment" which list Defendant Rebecca Whitman as president and Defendant Christopher Whitman as vice president of United Industrial. (*See* Doc. 60-3 ¶ 12 ; Doc. 60-30 at 8; Doc. 60-32 at 7). The only piece of evidence in the record that reflects a statement by Defendant Rebecca Whitman or Defendant Christopher Whitman that they are "responsible officers of United Industrial" are four forms titled "Proposed Assessment of Trust Fund Recovery Penalty." (Doc. 60-30 at 7, Doc. 60-31 at 7–9, Doc. 60-32 at 6; Doc. 60-33 at 7–9). The Government submitted these forms for the tax year 2011 as to Rebecca Whitman and for the tax year 2012 as to both of the Whitmans. (Doc. 60-30 at 6, Doc. 60-31 at 7–9, Doc. 60-32 at 6;

Doc. 60-33 at 7–9). In the section of each of the forms for Name and Address of Business, "United Industrial of Georgia, Inc." is listed and the company's address is given. (Doc. 60-30 at 7, Doc. 60-31 at 7–9, Doc. 60-32 at 6; Doc. 60-33 at 7–9). In the forms sent to Defendant Rebecca Whitman, in section for the name, address and social security number of person responsible, Rebecca Whitman's name is typed and her personal information is provided. (Doc. 60-30 at 7, Doc. 60-32 at 6; Doc. 60-33 at 7–9). The forms then contain the following statement:

> I consent to the assessment and collection of the penalty shown for each period, which is equal either to the amount of federal employment taxes withheld from employees' wages or to the amount of federal excise taxes collected from patrons or members; and which was not paid over to the Government by the business named above.

(Doc. 60-30 at 7; Doc. 60-32 at 6; Doc. 60-33 at 7–9). Defendant Rebecca Whitman signed the forms in the space for the "[s]ignature of person responsible[.]" (Doc. 60-30 at 7; Doc. 60-32; Doc. 60-33 at 7–9). In the forms sent to Defendant Christopher Whitman, in the section for the name, address and social security number of person responsible, Defendant Christopher Whitman's name is typed and his personal information is provided. (Doc. 60-31 at 7–9). The forms contained the statement from above, and Defendant Christopher Whitman signed the forms in the space for the "[s]ignature of person responsible[.]" (*Id.*).

Furthermore, when asked if he was the vice president of United Industrial and his wife was the president, Defendant Christopher Whitman invoked his Fifth Amendment right against self-incrimination. (Doc. 60-1 at 9; Doc. 60-27 at 28:18–24). "[T]he Fifth Amendment does not forbid adverse inferences against parties" in a civil action "when they refuse to testify in response to probative evidence offered against them." *Coquina Inv. v. TD Bank, N.A.*, 760 F.3d 1300, 1310 (11th Cir. 2014) (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)). "[A] motion for summary judgment cannot be granted on an adverse inference alone; rather, the inference must be weighed with other evidence in the matter in determining whether genuine issues of fact exist." *Sec. Exch. Comm'n v. Monterosso*, 746 F. Supp. 2d 1253, 1261 (S.D. Fla. 2010) (citations omitted). Here, while the additional

evidence is sparse, when considered alongside Defendant Rebecca Whitman's and Defendant Christopher Whitman's signatures as the persons responsible for United Industrial and their respective consents to the assessment, the adverse inference is sufficient—in the absence of any contrary evidence—to establish that Defendants Christopher Whitman and Rebecca Whitman are the responsible parties for Universal Industrial. (*See* Doc. 60-27 at 28:18–24; Doc. 60-30 at 7; Doc. 60-32 at 7–9; Doc. 60-32; Doc. 60-33 at 7–9).

"[O]nce an assessment of penalty taxes is made and it is established that the taxpayer is a responsible person, the burden of proving lack of willfulness is on the taxpayer." *Mazo v. United States*, 591 F.2d 1155, 1157 (5th Cir. 1979). Neither of the Whitmans responded to the Motion for Summary Judgment and Defendant Christopher Whitman makes no argument in his Motion for Summary Judgment that he did not act willfully. (*See* Docket; Doc. 64). Furthermore, as discussed above, "[i]n reducing assessment to judgment, the Government must first prove that the assessment was properly made" and is outstanding. *White*, 466 F.3d at 1248 (11th Cir. 2006) (citing *Palmer*, 116 F.3d at 1312); *Griggers*, 2024 WL 4265254, at *9 (citation omitted). If the Government files IRS Form 4340, "Certificate of Assessments, Payments, and Other Specified Matters," it establishes the presumption that the assessment was properly made. *Id.* (citing *Roberts*, 329 F.3d at 1227). Once the Government files Form IRS 4340, the burden shifts to the taxpayer to "prove that the assessment is erroneous in order to prevail." *Id.* (citing *Stallard*, 12 F.3d at 493). The Government has submitted certified copies of form 4340 for the penalties from the 2011 and 2012 tax years. (Docs. 60-7, 60-8). It has also produced a declaration from Agent Freeman verifying the calculations and account statements for each assessment showing unpaid balances. (Doc. 60-3 ¶ 12). The assessments are thus presumptively correct, and the burden shifts to the Whitmans to challenge the validity of the assessments. As discussed above, the Defendants failed to respond to the Government's Motion for Summary Judgment or contradict the facts set forth in the Government's Statement of Facts. (*See* Docket). Having reviewed the Government's Motion and the record, there is no genuine

issue of material fact as to the issue of whether Defendants Rebecca Whitman and Christopher Whitman are liable for the unpaid trust fund recover penalties.

### 3. Federal Tax Liens

Finally, the Government seeks judgment as a matter of law that "[t]he federal tax liens against the Whitmans attach to the five properties at issue and may be enforced upon a separate motion for decree of foreclosure and order of sale by the United States": the Sylvester Property, the Doerun Property, the 1912 Elkhorn Property, the 1919 Elkhorn Property, and the Mock Property. (Doc. 1 ¶ 20; Doc. 60-1 at 14). As discussed above, when a person fails to pay taxes "the amount . . . shall be a lien in favor of the United States upon all property and rights to property . . . belonging to such person." 26 U.S.C. 6321. "'Property' and 'rights to property' . . . include 'not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer.'" *May v.*, 2007 WL 3287513, at *1 (quoting *Spotts*, 429 F.3d at 251). "Such a lien generally arises 'at the time the assessment is made' and continues 'until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time.'" *United States v. Lena*, 370 F. App'x 65, 70 (11th Cir. 2010) (quoting 26 U.S.C. § 6322). The lien is perfected against third parties when a notice of the lien is filed. 26 U.S.C. § 6323(a).

Above, the Court entered default judgment against the Defaulting Defendants with possible property rights, in the five properties. Defendant Zachary Whitman, the titleholder of the Doerun Property, has appeared in this action to defend against foreclosure on the Doerun Property. (*See* Docket). In order for the Government to show that the liens have attached as a matter of law, it must first show that "the assessment was properly made" and then show that Defendant Christopher Whitman has "rights to [the five] proper[ties.]" *White*, 466 F.3d at 1248 (citing *Palmer*, 116 F.3d at 1312); 26 U.S.C. § 6321. First, as discussed above, the Government has satisfied its burden to show that the income taxes assessments were properly made. Thus, as long as the Whitmans have rights to the five properties, a federal tax lien attaches to each one.

### a. Sylvester Property

The Sylvester Property is piece of residential property where the Whitmans maintained their home, and where Defendant Rebecca Whitman continues to live after her husband's incarceration. (*See* Doc. 60-5 ¶ 13). The Court determined on the Motion for Default Judgment that ULOC is an alter ego of Defendant Christopher Whitman such that it does not have an interest in the Sylvester Property. The Whitmans purchased the Sylvester Property by Warranty Deed on May 14, 1993, and transferred the Property to ULOC, their alter ego, on May 17, 2011. (Docs. 60-13, 60-14). As the Court determined that ULOC is an alter ego of the Whitmans, the Whitmans and not ULOC maintain property rights in the Sylvester Property. Thus, the Whitmans have a right to the property under 26 U.S.C. 6321, and the federal tax lien attaches.

### b. Doerun Property

The Doerun Property consists of two tracts of land—one tract is three acres with a family home and the other is twenty acres of farmland with a barn and other agricultural outbuildings. (Doc. 60-1 at 12; Doc. 60-16). All Out purchased the Doerun Property on August 18, 2014, and sold it to Defendant Zachary Whitman on December 30, 2015. (Doc. 60-15, Doc. 60-16). The tax liens against the Whitmans arose when the tax assessments against the Whitmans were made[4] starting on October 15, 2012. (*See* Doc. 60-5 ¶ 2). The Government filed a Notice of Tax Lien in Worthy County, where the Doerun Property is located, against Defendant Zachary Whitman and All Out on October 21, 2022. (Doc. 60-5 ¶ 11; Doc. 60-12 at 14, 18). The Court has determined that All Out is an alter ego of the Whitmans such that the Whitmans maintained a beneficial interest in the property when they transferred the property to All Out; therefore, the Court must determine if Defendant Zachary Whitman now has an interest in the property preventing foreclosure.

To show that the tax liens attach to the Doerun Property, the Government must show as a matter of law either that Defendant Zachary Whitman is not a purchaser under 26

---

[4]    The Government assessed the tax liabilities for the Whitmans for the tax years 2009, 2010, 2011, 2012, and 2013, on October 15, 2012, November 12, 2012, December 31, 2012, July 15, 2013, December 16, 2013, and December 8, 2014. (Doc. 60-5 ¶ 2).

U.S.C. § 6323 or that Defendant Zachary Whitman holds bare legal title to the property as the nominee of All Out, such that the Whitmans maintain rights to the property. A purchaser is a "person, who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice" of a lien. 26 U.S.C. § 6323(h)(6). The party seeking to be considered a purchaser pursuant to § 6323 has the burden of presenting proof that he paid adequate consideration. *United States v. Chambers*, No. 3:09-cv-961-J-34JRK, 2014 WL 2136041, at *19 (M.D. Fla. May 22, 2014); *see also Resolution Tr. Corp. v. Gill*, 960 F.2d 336, 244 (3d Cir. 1992). Defendant Zachary Whitman argues that he is a purchaser pursuant to 26 U.S.C. § 6323 because he entered into a contract with his parents to pay $144,900.00 for the property before the Government filed the tax lien. (Doc. 63 ¶¶ 4–5; Doc. 63-5). Defendant Zachary Whitman further asserts that he made payments to Defendant Rebecca Whitman totaling $50,460.00 for the property before the notice of tax lien was filed against All Out. (Doc. 63; Doc. 63-5). The Government does not contest that the notice of tax lien against All Out was filed after Defendant Zachary Whitman purchased the property. (Doc. 60-1 at 11–12). It argues instead that Defendant Zachary Whitman is not a purchaser as a matter of law because Defendant Zachary Whitman has not presented evidence to show that $144,900, the amount contracted for, or $50,460.00, the amount paid, represents full consideration for the property. (Doc. 60-1 at 12). The Government further argues that even if Defendant Zachary Whitman is a purchaser for purposes of 26 U.S.C. § 6323, he is the nominee of All Out, the alter ego of the Whitmans, and thus only holds "bare legal title to the property." (*Id.* at 13–14).

The question of whether a purchaser paid full and adequate consideration is a question of federal law. *See United States v. McCombs*, 30 F.3d 310, 330 (2d Cir. 1994) ("[A] district court should be guided in its analysis of whether [a transferee is a] 'purchaser' under section 6323(a) by applicable federal, rather than state, law."). Federal regulations define adequate and full consideration as follows:

> a consideration in money or money's worth having a reasonable
> relationship to the true value of the interest in property
> acquired. . . . Adequate and full consideration in money or
> money's worth may include the consideration in a bona fide
> bargain purchase. The term also includes the consideration in
> a transaction in which the purchaser has not completed
> performance of his obligation, such as the consideration in an
> installment purchase contract, even though the purchaser has
> not completed the installment payments.

26 C.F.R. § 301.6323(h)-1(f)(3). Money or money's worth "includes money, a security . . ., tangible or intangible property, services, and other consideration reducible to a money value." *Id.* § 301.6323(h)-1(a)(3). "A firm commitment to part with money, a security . . . , tangible or intangible property, services, or other consideration reducible to a money value does not, in itself, constitute a consideration in money or money's worth." *Id.*

Defendant Zachary Whitman is not a bona fide bargain purchaser. While the statute does not define the term, in determining whether a transferee is a bona fide bargain purchaser, district courts consider whether the record evidence demonstrates that the seller had a reason to sell the property for considerably less than its value—evincing a legitimate bargain price rather than self-dealing or fraud. *See United States v. Thompson,* 966 F. Supp. 1140, 1143 (S.D. Ala. 1997); *United States v. Mac Cement Finishing Corp.*, 546 F. Supp. 52, 54 (N.D.N.Y. 1982). Here, All Out purchased the property for $144,900, and the Worth County, Georgia Public Records on the Doerun Property characterizes the $144,900 purchase price as the property's "[f]air [m]arket[.]" *Parcel No. 00640053, Worth County, GA,* qPublic.net, https://qpublic.schneidercorp.com/Application.aspx?AppID=721&LayerID=11764&PageTypeID=4&PageID=5418&Q=1786350432&KeyValue=00640053 (last visited March 24, 2025); *Parcel No. 0064005300C, Worth County, GA*, qPublic.net, https://qpublic.schneidercorp.com/Application.aspx?AppID=721&LayerID=11764&PageTypeID=4&PageID=5418&Q=1786350432&KeyValue=0064005300C (last visited

March 24, 2025). Thus, the question is whether Defendant Zachary Whitten has paid adequate and full consideration for the Doerun Property.

"Little guidance has been furnished for the measurement of adequate and full consideration." *Mac Cement Finishing Corp.*, 546 F. Supp. at 53. Clearly, where no consideration is offered, such consideration would not be adequate. *See id.* "The amount paid cannot be so small as to have little worth relative to the value of the property acquired, but a bona fide bargain purchase is not precluded." *Id.* (citing S. Rep. No. 1708, 89th Cong. 2nd Session 14). "[C]ourts in other circuits have consistently 'required that the consideration and property value in this equation [under 26 C.F.R. section 301.6323(h)-1(f)(3)] be relatively close." *WSB Walnuts Assocs., LLC v. United States*, C 04-0898 MHP, 2006 WL 1348520, at *7 (N.D. Cal. May 17, 2006) (alteration in original) (quoting *United States v. McCombs*, 928 F. Supp. 261, 268 (W.D.N.Y. 1995); and then citing *Mac Cement Finishing Corp.*, 546 F. Supp. at 53–54; and then citing *Dist. Divine Sci. Church v. United States*, No. F 79-100, 1979 WL 1523, at *3 (N.D. Ind. Dec. 4, 1979)). District courts have granted summary judgment in favor of the Government, finding that a transferee was not a "purchaser" within the meaning of § 6323, where the transferee paid half of the fair market value, such that "the consideration [did not] have a reasonable relationship to the true value of the property acquired[,]" and where there was no evidence that the transferee was a bona fide bargain purchaser. *Mac Cement Finishing Corp.*, 546 F. Supp. at 53–54 (granting summary judgment in favor of the Government where transferee paid 45% consideration and made no showing that he was a "bona fide bargain purchaser[,]" explaining "the consideration furnished . . . cannot be designated 'full' in any sense, even if it were possible to characterize it as 'adequate'"); *see also A&B Steel Shearing & Processing, Inc. v. United States*, 934 F. Supp. 254, 258 (E.D. Mich. 1996) (granting Government's motion for summary judgment and finding that alleged purchaser did not pay full and adequate consideration for the land where he "at most, paid half consideration"—the purchaser only paid $76,000 where the parties agreed in the contract that he would pay $152,000).

Construing the evidence in the light most favorable to Defendant Zachary Whitman, he is not a purchaser within the meaning of § 6323 because he did not pay "adequate and

full consideration" for the property. 26 U.S.C. § 6323(h)(6). According to Defendant Zachary Whitman, he negotiated with Defendant Rebecca Whitman and agreed to pay $144,900 for the property in installments of $580 per month. (Doc. 63 ¶ 4). According to the affidavit of Defendant Rebecca Whitman, Defendant Zachary Whitman agreed to pay $144,900 for the Doerun Property and has paid her "$50,460.00[.]" (Doc. 59-12 ¶¶ 3–4). The $50,460 paid by Defendant Zachary Whitman amounts to roughly thirty-five percent of the fair value of the property. (*See* Docs. 59-6, 59-12, 59-13). Payment of 35% of the fair value of the Doerun Property does not constitute "full and adequate consideration." *See* 26 U.S.C. § 6323(h)(6); *Mac Cement Finishing Corp.*, 546 F. Supp. at 53–54; *A&B Steel Shearing & Processing, Inc.*, 934 F. Supp. at 258. Accordingly, the Court need not consider whether Defendant Zachary Whitman is All Out's nominee because he is not a purchaser pursuant to § 6323.

### a. Elkhorn Properties

The Elkhorn Properties are rental properties in Worth County. (Docs. 60-17, 60-18). Defendant Christopher Whitman bought the Elkhorn Properties on November 5, 2010 and November 19, 2010. (Docs. 60-17, 60-18). He transferred the Elkhorn Properties to Zamekri on April 29, 2011, and Zamekri transferred the Elkhorn Properties to CWW on May 3, 2012. (Docs. 60-19–60-22). The Court determined on the Motion for Default Judgment that Zamekri and CWW are nominees of Defendant Christopher Whitman such that Defendant Christopher Whitman, and not Zamekri or CWW, has rights to the Elkhorn Properties. Furthermore, Defendants Briley and Lewis, as tenants, do not have ownership rights to the 1919 Elkhorn Property. (*See* Doc. 1 ¶¶ 17–18). Accordingly, Defendant Christopher Whitman has an ownership interest in the Elkhorn Properties and the lien attaches as a matter of law.

### b. Mock Property

The Mock Property is located in Dougherty County, Georgia. (Doc. 60-23). All Out purchased the Mock Property on November 18, 2014. (*Id.*). The Court determined on the Motion for Default Judgment that All Out is an alter ego of the Whitmans such that it does not have an interest in the Mock Property and that Defendant Christopher Whitman is the

true owner. No other entity or person claims an interest in the property. Accordingly, the Whitmans have rights to the Mock Property, and the lien attaches as a matter of law. 26 U.S.C. § 6321.

### B. Defendant Christopher Whitman's Motion for Summary Judgment

Defendant Christopher Whitman also moves for summary judgment. (Doc. 64). Pursuant to the Court's Scheduling and Discovery Order, as amended by orders granting requests for discovery extensions, dispositive motions were due on July 29, 2024. (Docs. 32, 54). Pro se prisoner Defendant Christopher Whitman dated his motion August 20, 2024, and the motion was filed on August 26, 2024. (Doc. 64). Considering the filing date as August 20, 2024, per the prison mailbox rule, Defendant Christopher Whitman's Motion for Summary Judgment was filed twenty-two days late and is untimely. *See Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing[.]"); "); *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (per curiam) ("Absent evidence to the contrary, we assume that a prisoner delivered a filing to prison authorities on the date that he signed it." (citation omitted)). "District Courts 'enjoy broad discretion in deciding how to best manage the cases before them'. . . [including] whether to consider untimely motions for summary judgment[.]" *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 595 (11th Cir. 2008) (per curiam) (first quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) and then citing *Matia v. Carpet Transp., Inc.*, 888 F.2d 118, 119 (11th Cir. 1989) (per curiam)). Upon due consideration, the Court declines to consider Defendant Christopher Whitman's Motion for Summary Judgment. (Doc. 64).

### C. Defendant Zachary Whitman's Motion for Summary Judgment

Defendant Zachary Whitman argues that he is a purchaser pursuant to 26 U.S.C. § 6323 as a matter of law. (Doc 59-1). As the Court determined above, Defendant Zachary Whitman did not pay "adequate and full" consideration for the Doerun Property and therefore does not qualify as a purchaser pursuant to § 6323. To the extent that Defendant Zachary Whitman argues that the lien is a taking under the Fifth Amendment of the United

States Constitution, the United States Supreme Court has held that § 7403 is an appropriate tool used by the federal government to collect taxes through "the exercise of a sovereign prerogative, incident to the power to enforce the obligations of the taxpayer himself, and ultimately grounded in the constitutional mandate to 'lay and collect taxes.'" *United States v. Rodgers*, 461 U.S. 677, 697 (1983) ("[If] §7403 allowed for the gratuitous confiscation of one person's property interests in order to satisfy another person's tax indebtedness, such a provision might pose significant difficulties under the Due Process Clause of the Fifth Amendment[,]" but "§7403 makes no further use of third-party property interests than to facilitate the extraction of value from those concurrent property interests that are properly liable for the taxpayer's debt."); *see also Branch ex rel. M. Nat'l Bank v. United States*, 69 F.3d 1571, 1576 (Fed. Cir. 1995 ("[E]nforcement action [of tax assessment], including seizure of the property, could not be challenged as a taking" (citing *United States v. Garcia*, 474 F.2d 1202, 1205 (5th Cir. 1973)).

## CONCLUSION

Accordingly, the Government's Motion for Default Judgment (Doc. 58) is **GRANTED**, the Government's Motion for Summary Judgment (Doc. 60) is **GRANTED**, Defendant Christopher Whitman's Motion for Summary Judgment (Doc. 64) is **DENIED**, and Defendant Zachary Whitman's Motion for Summary Judgment (Doc. 59) is **DENIED** as untimely.

**SO ORDERED**, this 31st day of March, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**